**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

_____

MARK DADDAZIO and        :
PATRICIA BLAUSER,        :
on behalf of        :
themselves and all others        :
similarly situated,        :
        :
    Plaintiffs,        :
        :   Civil Action No. 1:23-cv-00635-JPW
    vs.        :
        :
VALERIE A. ARKOOSH, in        :
her official        :
capacity as Acting Secretary of        :
the Pennsylvania Department        :
of Human Services,        :
        :
        :
    Defendant.        :

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT**
**OF CLASS CERTIFICATION**

Rhonda Brownstein (PA I.D. No. 46866)
Brynne S. Madway (PA I.D. No. 316422)
Disability Rights Pennsylvania
1800 John F. Kennedy Boulevard
Suite 900
Philadelphia, PA 19103
215-238-8070
rbrownstein@disabilityrightspa.org
bmadway@disabilityrightspa.org

*Counsel for Plaintiffs*

# TABLE CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

**Procedural History of Case and Statement of Facts** ............................ 1

**QUESTION INVOLVED** ........................................................................... 7

**ARGUMENT** ........................................................................................... 7

   **I.   Plaintiffs Satisfy the Prerequisites of Federal Rule of Civil Procedure 23(a).** ................................................................................ 7

      **A.   The proposed class is so numerous that joinder of all members is impracticable.** ............................................................. 8

      **B.   There are questions of law and fact common to Plaintiffs and the class.** ............................................................................... 10

      **C.   Plaintiffs' claims are typical of those of class members.** ........ 16

      **D.   The Plaintiffs will fairly and adequately represent the class.** 17

   **II.   This Action is Maintainable as a Class Action Under Rule 23(b)(2) Because Defendants Have Acted and Refused to Act on Grounds Generally Applicable to the Class.** ..................................... 19

**CONCLUSION** ..................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Allen v. Ollie's Bargain Outlet.*,
  37 F.4th 890, 896 (3rd Cir. 2022) .............................................................9

*Am. Sales Co. v. SmithKline Beecham Corp.,*
  274 F.R.D. 127, 132 (E.D. Pa. 2010)......................................................8

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455, 466 (2013) ......................................................................11

*Armstead v. Pingree,*
  629 F. Supp. 273, 279 (M.D. Fla. 1986) ................................................10

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48, 56 (3d Cir. 1994) ............................................. 11, 15, 16, 19

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
   (E.D. Pa. Jul. 1, 1999); ...............................................................8, 9, 17

*Frederick L v. Dep't of Pub. Welfare,*
  422 F.3d 151, 160 (3d Cir. 2005)................................................. 1, 13, 20

*Hassine v. Jeffes,*
  846 F.2d 169, 177 (3d Cir. 1988)......................................................16, 19

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516, 531–32 (3d Cir. 2004)......................................................16

*Kathleen S. v. Dep't of Pub. Welfare.*,
  No. CIV. A. 97-6610 (E.D. Pa. Feb. 25, 1998)........................................13

*Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*,
  293 F.R.D. 254, 265 (D.N.H. 2013) ..................................... 10, 14, 16, 20

*Logory v. Cnty. of Susquehanna*,
  227 F.R.D. 135, 140 (M.D. Pa. 2011)...................................................8, 9

*Metts v. Houstoun*,
  No. 97-4123, 1997 (E.D. Pa. Oct. 24, 1997) ........................................... 19

*Mielo v. Stake 'n Shake*,
  897 F.3d 467, 484 (3rd Cir 2018) ........................................................... 9

*N.B. v. Hamos*,
  26 F. Supp. 3d 756, 769 (N.D. Ill. 2014) .......................................... 10, 15

*New Directions Treatment Servs. v. City of Reading*,
  490 F.3d 293, 313 (3d Cir. 2007) ........................................................... 18

*Olmstead v. L.C.*,
  527 U.S. 581, 605-06 (1999) ................................................................... 1

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 372, 382 (3d Cir. 2013) ........................................................... 11

*Rolland v. Celluci,*
  No. Civ A, 90-30208 (D. Mass. Feb. 2, 1999). ........................................ 9

*S.R. v. Pa. Dep't of Human Servs.*,
  325 F.R.D. 103 (M.D. Pa. 2018) ............................................................. 20

*Shelton v. Bledsoe*,
  775 F.3d 554, 563 (3d Cir. 2015) ....................................................... 8, 20

*Stewart v. Abraham*,
  275 F.3d 220, 226–27 (3d Cir. 2001) ...................................................... 8

*Thorpe v. District of Columbia*,
  303 F.R.D. 120, 124 (D.D.C. 2014) ....................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 350 (2011) ....................................................................... 11

*Weiss v. York Hosp.*,
  745 F. 2d 786, 809 n.36 (3d Cir. 1984) ................................................. 17

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239, 247 (3d Cir.1975) ........................................................... 18

## Statutes

28 C.F.R. § 35.130(d) .................................................................................... 6

42 U.S.C. §§ 12131–12134 ........................................................................... 6

7A Fed. Prac. & Proc. Civ. § 1763 (4th ed.) .............................................. 15

Federal Rules of Civil Procedure 23 ........................................................... 19

Federal Rules of Civil Procedure 23(a) .......................................... 7, 15, 20

Federal Rule Civil Procedure 23(a)(1) ................................................... 8, 10

Federal Rule of Civil Procedure 23(a)(2) ................................................... 10

Federal Rules of Civil Procedure 23(a)(3) .................................................. 16

Federal Rules of Civil Procedure 23(a)(4) ............................................ 17, 18

Federal Rules of Civil Procedure 23(b) ............................................... 19, 20

Federal Rules of Civil Procedure 23(b)(2) ............................................. 7, 19

## Other Authorities

Olmstead Plan for Pennsylvania's State Mental Health System, ............. 2, 4

Pennsylvania Department of Human Services, Governor's Executive
    Budget 2018–2019 ..................................................................................... 3

Pennsylvania Department of Human Services, Governor's Executive
    Budget 2019–2020 ..................................................................................... 3

Pennsylvania Department of Human Services, Governor's Executive
    Budget 2020–2021 ..................................................................................... 3

Pennsylvania Department of Human Services, Governor's Executive
   Budget 2021–2022 ........................................................................3

Pennsylvania Department of Human Services, Governor's Executive
   Budget 2022–2023 ........................................................................3

Pennsylvania Department of Human Services, Governor's Executive
   Budget 2023–2024 ........................................................................2

## Procedural History of Case and Statement of Facts

This case was filed by Named Plaintiffs Mark Daddazio and Patricia Blauser on behalf of a class of over 800 residents of Pennsylvania's six state psychiatric hospitals. Plaintiffs challenge their unlawful segregation in the state hospitals as a violation of the Americans with Disabilities Act ("ADA"), which requires states to provide services to institutionalized individuals with disabilities in the most integrated settings appropriate to their needs. Plaintiffs are capable of living in more integrated, community-based settings if they receive the necessary services and supports.

To comply with the ADA's integration mandate, states may choose to implement an Olmstead Plan, which is "a comprehensive, effectively working plan for placing qualified persons with mental disabilities in less restrictive settings." *Olmstead v. L.C.*, 527 U.S. 581, 605-06 (1999). That Plan must include benchmarks and timelines for discharge. *Frederick L v. Dep't of Pub. Welfare,* 422 F.3d 151, 160 (3d Cir. 2005). The Commonwealth's most recent Olmstead Plan, which was published in 2016, provides that its integration mandate for people with mental health disabilities will be carried out through the Community Hospital Integrations Project Program ("CHIPP"). Olmstead Plan for Pennsylvania's State Mental

1

Health System, DHS, at 2 (May 16, 2016),

https://www.dhs.pa.gov/Services/Mental-Health-In-

PA/Documents/Olmstead%20Plan/Olmstead%202016.pdf, attached as Ex.

A, pp. 1-2.

The CHIPP program, which was first established in FY 1991-92, is

designed to reallocate funding from the state hospitals to the community so

that individuals can be discharged from state hospitals and served in the

least restrictive setting possible. *Id.* Projects funded through CHIPP serve

other individuals in the community as well, and it is estimated that each

CHIPP allocation serves four to five additional individuals in the community

each year. *See* Pennsylvania Department of Human Services, Governor's

Executive Budget 2023–2024 at 67,

https://www.dhs.pa.gov/docs/Publications/Documents/Budget%20Informati

on/2023-2024_DHS-Blue-Book.pdf, excerpts attached as Ex. B.

The Commonwealth's 2016 Olmstead Plan requires that DHS request

funding for at least ninety CHIPP slots each fiscal year to provide supports

and services for individuals leaving the state hospitals and returning to the

community. Ex. A at 8. But the Commonwealth has consistently failed to

comply with its own Plan and has not proposed funding ninety CHIPP slots

since Fiscal Year 2017-18:

| Fiscal Year | 2018–2019[1] | 2019–2020[2] | 2020–2021[3] | 2021–2022[4] | 2022–2023[5] | 2023–2024[6] |
|---|---|---|---|---|---|---|
| **CHIPP Slots Funded** | 45 | 45 | 20 | 20 | 20 | 20 (proposed) |

At the same time, data from DHS's Home and Community Services Information System shows a dramatic decrease in the number of CHIPP participants, with fewer than twenty people being served in the 2018–2019 and 2019–2020 fiscal years. *See* RTKL Request 21-338, CHIPP Participants Identified in HCSIS Report, attached as Ex. C.

---

[1] Pennsylvania Department of Human Services, Governor's Executive Budget 2018–2019 at 135–37, excerpts attached as Ex. D.

[2] Pennsylvania Department of Human Services, Governor's Executive Budget 2019–2020 at 70, https://www.dhs.pa.gov/docs/Publications/Documents/Budget%20Information/c_286872.pdf, excerpts attached as Ex. E.

[3] Pennsylvania Department of Human Services, Governor's Executive Budget 2020–2021 at 65, https://www.dhs.pa.gov/docs/Publications/Documents/Budget%20Information/20-21%20DHS%20Blue%20Book.pdf, excerpts attached as Ex. F.

[4] Pennsylvania Department of Human Services, Governor's Executive Budget 2021–2022 at 72, https://www.dhs.pa.gov/docs/Publications/Documents/Budget%20Information/21-22%20DHS%20Blue%20Book.pdf,  excerpts attached as Ex. G.

[5] Pennsylvania Department of Human Services, Governor's Executive Budget 2022–2023 at 64, https://www.dhs.pa.gov/docs/Publications/Documents/Budget%20Information/2022-23-DHS-Blue-Book.pdf, excerpts attached as Ex. H.

[6] *See* Ex. B.

Individuals committed to the state hospital are required to have a Community Support Plan ("CSP") that identifies the resources that they will need to live in the community. Ex. A at 7. DHS's Olmstead Plan explains that "[t]he CSP process serves as the foundation for successful implementation of this Olmstead plan" and that each CSP will "[p]rovide services and supports that will meet all of the person's unique needs and preferences[.]" *Id.* As a result of systemic failures in the CSP process, however, CSPs do not adequately identify the services and supports that individuals need to successfully live in the community.

Plaintiffs are individuals who wish to live in the most integrated setting possible. But as a result of DHS's failure to properly evaluate their needs, its failure to adequately fund community placements and services, and its failure to comply with its own Olmstead Plan, Plaintiffs have remained unnecessarily institutionalized and segregated in state hospitals far longer than necessary.

- Plaintiff Mark Daddazio is a 38-year-old man from Lebanon County. He was involuntarily committed to Wernersville Hospital on February 7, 2017—over six years ago. He remains unnecessarily institutionalized at Wernersville even though his treatment team has recommended his discharge since at least

4

January 2022. DHS has failed to properly assess his
community service needs and has failed to fund sufficient
appropriate community-based residential and non-residential
programs to serve him.

- Plaintiff Patricia Blauser is a 21-year-old woman from Venango
  County. She was involuntarily committed to Warren State
  Hospital on October 7, 2021. In February 2023, the Mental
  Health Review Officer in her case noted that no community
  placements would accept her. Rather than determine her needs
  and develop a community support plan to fit them, her
  treatment team is attempting to fit her into an existing array of
  community-based services that may not be necessary or
  adequate to her needs. According to state hospital records, with
  the appropriate support and services, Ms. Blauser could live in
  the community.

Plaintiffs' situations are not unique. There are more than 800 other
institutionalized individuals residing in the state hospitals. *See*
Pennsylvania State Hospital System Length of Stay, Demographics, and
Diagnosis Report, Pennsylvania Department of Human Services,
https://www.dhs.pa.gov/Services/Assistance/Documents/State%20Hospital

s/SH-LOS-Demogs-Dx-Report-2021.pdf, attached as Ex. I, p. 4. Even the CEOs of the state hospitals recognize the scope of this problem. As one explained, the "[g]reatest barriers to discharge are greatly related to [sic] availability of community resources and appropriate placements." Letter from A. Agostini, Wernersville State Hospital CEO to Nash Boone, DRP Managing Attorney for Investigations and Monitorings (Sept. 1, 2022, rec'd Jan. 23, 2023), attached as Ex. J.

Plaintiffs file this class action on behalf of themselves and other similarly situated institutionalized persons with mental health disabilities. Plaintiffs allege that DHS violates the ADA's integration mandate, 42 U.S.C. §§ 12131–12134, 28 C.F.R. § 35.130(d), by continuing to segregate Plaintiffs without justification and by failing to provide Plaintiffs and similarly situated state hospital residents with mental health services in the most integrated setting appropriate to their needs. Plaintiffs seek only declaratory and injunctive relief.

To the extent that Defendant contests the factual allegations that form the basis of this Motion, Plaintiffs request the opportunity to conduct class-related discovery and present evidence at a hearing or provide additional submissions to the Court for the purpose of resolving this Motion.

## **QUESTION INVOLVED**

Whether this case should be certified as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of current and future residents of Pennsylvania's six state-operated psychiatric hospitals, excluding individuals subject to commitment pursuant to 50 P.S. § 7401–07 (commitments of persons charged with a crime or under sentence), and 42 Pa. Cons. Stat. Ann. § 6403 (court-ordered involuntary treatment for certain sexual offenses).

## **ARGUMENT**

### I.    **Plaintiffs Satisfy the Prerequisites of Federal Rule of Civil Procedure 23(a).**

Federal Rule of Civil Procedure 23(a) establishes four requirements for a class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly

and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).[7]

The proposed class satisfies each of these requirements.

## A. The proposed class is so numerous that joinder of all members is impracticable.

Rule 23(a)(1) requires that the class be sufficiently large that "joinder of all members is impracticable." Fed. R. Civ P. 23(a)(1). "Impracticability of joinder does not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the putative class calls for class certification." *Cureton v. Nat'l Collegiate Athletic Ass'n*, No. CIV. A. 97-131, 1999 WL 447313, at *5 (E.D. Pa. Jul. 1, 1999); *Am. Sales Co. v. SmithKline Beecham Corp.,* 274 F.R.D. 127, 132 (E.D. Pa. 2010) ("The touchstone of the numerosity inquiry is not the number of plaintiffs, but the practicability of joining those plaintiffs.")

"No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). *See Logory v. Cnty. of Susquehanna*, 227 F.R.D. 135, 140 (M.D. Pa. 2011)

---

[7] "[A]scertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief, such as the putative class here." *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015).

("the Court concludes by a preponderance of the evidence that this number easily exceeds forty (40) and thus numerosity is satisfied.") This is particularly true when "only declaratory and injunctive relief is sought." *Rolland v. Celluci,* No. Civ A, 90-30208, 1999 WL 34815562, at *3 (D. Mass. Feb. 2, 1999).

The Third Circuit recently instructed courts to look at other numerosity factors if the plaintiff cannot "directly identify" class members. *See Allen v. Ollie's Bargain Outlet.*, 37 F.4th 890, 896 (3rd Cir. 2022) (quoting *Mielo v. Stake 'n Shake*, 897 F.3d 467, 484 (3rd Cir 2018)). But doing so is unnecessary here because the class members can be readily identified— all are state hospital residents who are civilly committed. And even if the Court were to examine additional factors, such as "the ease of identifying members and determining addresses, ease of service on members if joined, geographic dispersion, and the ability of class members to pursue individual suits," *Cureton*, 1999 WL 447313, at *6, all of those factors weigh in favor of granting class certification here.  *See also Logory*, 277 F.R.D. at 140–41 (finding relevant that the class members are dispersed, low-income, and may not know their rights).

In a similar case brought by individuals with serious mental health illness who were unnecessarily institutionalized in New Hampshire, the

9

court observed that "[t]he size of the class, the asserted disabilities of proposed class members, and geographic diversity, make it 'highly unlikely that separate actions would follow if class treatment were denied.'" *Kenneth R. ex rel. Tri-Cnty. CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 265 (D.N.H. 2013) (quoting *Armstead v. Pingree,* 629 F. Supp. 273, 279 (M.D. Fla. 1986)). Courts have also found in favor of class certification when, as here, the class consists of an "extremely vulnerable population" with health issues and financial limitations. *See N.B. v. Hamos*, 26 F. Supp. 3d 756, 769 (N.D. Ill. 2014).

This case satisfies Rule 23(a)'s numerosity requirement. As of 2021, the most recent calendar year with published data, there were more than 800 people civilly committed to Pennsylvania's state hospitals. *See* Ex. I. The proposed class members are institutionalized, have limited income, are highly vulnerable, and have serious mental illnesses and other disabilities. These factors, coupled with the size of the class, make joinder impracticable and satisfy Rule 23(a)(1).

## B. There are questions of law and fact common to Plaintiffs and the class.

Rule 23(a)(2) requires questions of law or fact common to the class. To satisfy this requirement, a class's claims must depend on a "common contention . . . . of such a nature that it is capable of classwide resolution."

10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2), '[e]ven a single [common] question' will do[.]" *Id.* at 359.

The "bar for commonality is not a high one." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).[8] Plaintiffs need only demonstrate that they have all been "subject to the same harm." *Id.* at 56 (emphasis omitted). Courts routinely grant class action status to cases challenging "a program's compliance with the mandates of its enabling legislation," challenges "based on alleged violations of statutory standards," and cases seeking injunctive relief. *Id.* at 56–57.

Commonality can be present "even when not all plaintiffs suffered an actual injury, [citation omitted], when plaintiffs did not bring identical claims, [citation omitted], and, most dramatically, when some plaintiffs' claims may not have been legally viable, [citation omitted]." *Rodriguez*, 726 F.3d at

---

[8] "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

382. Ultimately, "[t]here may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant." *Id.*

This case presents numerous questions of fact or law that are common to Plaintiffs and all class members:

- whether DHS fails to perform proper, individualized assessments to determine the community-based services that residents need for them to be discharged;

- whether DHS fails to adequately fund counties to enable them to develop appropriate community-based programs for residents;

- whether DHS has a viable, working integration plan with benchmarks and timelines;

- whether DHS violates the ADA by failing to provide services to residents in the most integrated setting appropriate to their needs; and

- whether DHS violates the ADA by using methods of administration that have the effect of discriminating against state hospital residents by continuing their unnecessary institutionalization.

12

Courts routinely hold that Rule 23(a)'s common question requirement is satisfied in cases involving the rights of people with disabilities to receive services in the most integrated settings. More than twenty years ago, similar classes were certified of individuals involuntarily institutionalized at Norristown State Hospital and Haverford State Hospital. *See Frederick L. v. Dep't of Pub. Welfare*, 364 F.3d 487, 489 (3d Cir. 2004) (noting that appellants "represent a class of mental health patients institutionalized in the Norristown State Hospital" seeking a "more accelerated program of deinstitutionalization."); *Kathleen S. v. Dep't of Pub. Welfare*., No. CIV. A. 97-6610, 1998 WL 83973, at *1 (E.D. Pa. Feb. 25, 1998) (certifying class of "all persons institutionalized at [Haverford State Hospital] as of August 26, 1997" and a subclass of "all Delaware County residents institutionalized at [Haverford State Hospital] as of August 26, 1997.").

In *Kathleen S.*, the court held that there were common questions where the Plaintiffs, residents of the former Haverford State Hospital, alleged that DHS violated the integration mandate of the ADA by failing to provide them with "services in the most integrated setting appropriate to their needs." 1998 WL 83973, at *1. The court found that there was a common issue: "whether the Defendants have discriminated against HSH

residents in violation of the ADA by failing to provide them with services in the most integrated setting appropriate to their needs." *Id.* at *2.

Similarly, in *Kenneth R.*, 239 F.R.D. at 260, the court held that there were common questions in a case involving allegations that New Hampshire violated the integration mandate of the Americans with Disabilities Act and Rehabilitation Act by relying "excessively on the provision of institutional care to treat mental illness, rather than appropriate community-based care programs[.]" As the court explained, the plaintiffs were able to show that "questions susceptible to common answers are present. For instance, whether there is a systemic deficiency in the availability of community-based services, and whether that deficiency follows from the State's policies and practices, are questions central to plaintiffs' theory of the case." *Id.* at 267.

Likewise, in *Thorpe v. District of Columbia*, 303 F.R.D. 120, 124 (D.D.C. 2014), the court certified a class of current and former nursing facility residents who alleged that the District of Columbia provided long-term care services "in a manner that results in the unnecessary segregation of such individuals in nursing facilities in violation of Title II of the Americans with Disabilities Act." The court found that the plaintiffs raised a number of common questions with their contention that the District of

14

Columbia violated "the integration mandate and injuring each and every class member by virtue of its failure to implement an effective system of transition assistance." *Id.* at 146; *see also N.B. v. Hamos*, 26 F. Supp. 3d 756, 773 (N.D. Ill. 2014) (finding that the complaint raised common legal issues by alleging a "systemic failure to provide required coverage for home and community-based services.")

These decisions are consistent with the Third Circuit's decision in *Baby Neal*. In *Baby Neal*, the court explained that "[c]hallenges to a program's compliance with the mandates of its enabling legislation, even where plaintiff-beneficiaries are differently impacted by the violations, have satisfied the commonality requirement." 43 F.3d at 476. "Moreover, because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2).'" *Id.* at *58.* (quoting 7A Fed. Prac. & Proc. Civ. § 1763 (4th ed.)).

Plaintiffs raise multiple common legal and factual questions centering on whether the Commonwealth is violating the integration mandate of the ADA, satisfying Rule 23(a)'s commonality requirement.

### C. **Plaintiffs' claims are typical of those of class members.**

Plaintiffs also satisfy Rule 23(a)(3)'s typicality requirement. "Typicality asks whether the named plaintiffs' claims are typical, in common-sense terms, of the class." *Baby Neal*, 43 F.3d at 55. "Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be common to the class, and that the named plaintiff demonstrate a personal interest." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988).

"Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id.* at 58; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531–32 (3d Cir. 2004) ("However, typicality, as with commonality, does not require 'that all putative class members share identical claims.'") (citation omitted). This requirement "is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Id.* at 531. Even in cases where plaintiffs seek to shift funding from institutions to community-based services, courts have found typicality. *Kenneth R.*, 293 F.R.D. at 270 ("all class members, as defined and without regard to current preferences, have

16

an abiding interest in securing the availability of community-based services options sufficient to preclude unnecessary institutionalization.").

Plaintiffs' and the putative class members' claims arise from the same set of circumstances and are creating the same harm: the Commonwealth is failing to ensure that state hospital residents are properly evaluated and provided with services in the least restrictive setting. *See Cureton*, 1999 WL 447313, at *8 ("Plaintiffs' action seeking declaratory and injunctive relief . . . is typical of the putative class since is it 'based on patterns or practices not special or unique to [Plaintiffs,] [and] a significant number of other members of the class have been similarly victimized by the same patterns or practices.'" (quoting *Weiss v. York Hosp.*, 745 F. 2d 786, 809 n.36 (3d Cir. 1984)). Further, Plaintiffs' and putative class members' claims are all based on the same legal theories, i.e., a violation of the ADA's integration mandate.

## D. **The Plaintiffs will fairly and adequately represent the class.**

Rule 23(a)(4) requires that a named representative fairly and adequately protect the interests of the class. "'Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *New*

*Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir.

2007) (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d

Cir.1975)). Both requirements are satisfied here.

First, Plaintiffs' counsel are well qualified to represent the class.

Plaintiffs' counsel are attorneys with Disability Rights Pennsylvania

("DRP"), the organization designated by the Commonwealth of

Pennsylvania pursuant to federal law to protect the rights of and advocate

for individuals with disabilities. DRP has substantial experience in disability

rights and class action litigation in federal courts. *See* Brownstein Decl.,

attached as Ex. K. Accordingly, Rule 23(a)(4) is satisfied.[9]

Second, the Named Plaintiffs have no interests antagonistic to the

class. The Named Plaintiffs and the putative class members experience the

same harms (delayed discharges and improper evaluations) and seek the

same relief (declaratory and injunctive relief to end DHS' violations of

federal law.). "Because the plaintiffs seek the same injunctive relief as all

members of the class, the court 'can find no potential for conflict between

---

[9] In appointing class counsel, the Court should consider:  the work counsel has done in investigating claims; counsel's experience in handling these types of cases; counsel's knowledge of the law; and the resources counsel can commit to the case. Fed. R. Civ. Pr. 23(g)(1)(A). Counsel not only has the requisite knowledge, expertise, and resources to pursue this action, but has dedicated resources to exploring and identifying these claims.

the claims of the complainants and those of the class as a whole.'" *Metts v. Houstoun*, No. 97-4123, 1997 WL 688804, at *4 (E.D. Pa. Oct. 24, 1997) (quoting *Hassine*, 846 F.2d at 179).

## II. This Action is Maintainable as a Class Action Under Rule 23(b)(2) Because Defendants Have Acted and Refused to Act <u>on Grounds Generally Applicable to the Class.</u>

In addition to meeting the requirements of Rule 23(a), a party seeking class certification must also establish that the class falls into one of the 23(b) categories. Rule 23(b) permits a class action to be maintained if: "The party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "This requirement is almost automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal*, 43 F.3d at 58 (3d Cir. 1994). Moreover, "[i]t is the (b)(2) class which serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment." *Id.* at 58–59; *see also* Fed. R. Civ. Pr. 23 advisory committee's note (1996) ("Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration."). A "properly defined" Rule 23(b)(2) class must (1) satisfy the requirements of Rule

19

23(a); (2) be cohesive; and (3) be capable of a "'discernable, clear, and precise'" definition. *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015).

This case and class definition readily meet the requirements of Rule 23(b)(2). Plaintiffs seek only declaratory and injunctive relief to ensure that Defendant complies with its obligations under the ADA. Similar cases brought to enforce statutory mandates have been certified under Rule 23(b)(2). *See Frederick L. v. Dep't of Public Welfare*, 364 F.3d 489 (3d Cir. 2005) (certifying similar class of Norristown State Hospital patients who brought similar claims to challenge their unnecessary institutionalization); *Kenneth R.*, 293 F.R.D. at 258 (certifying ADA and RA claims brought by individuals with serious mental illness alleging they were unnecessarily institutionalized); *see also S.R. v. Pa. Dep't of Human Servs.*, 325 F.R.D. 103 (M.D. Pa. 2018) (certifying class of dependent youth who sought to enforce statutory obligations under Title XIX, the ADA, and RA). This case, too, should be certified.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court certify this case to proceed as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).

Date: April 24, 2023                    **DISABILITY RIGHTS PENNSYLVANIA,**

By: _Rhonda Brownstein_
Rhonda Brownstein (PA I.D. No. 46866)
Brynne S. Madway (PA I.D. No. 316422)
1800 John F. Kennedy Boulevard
Suite 900
Philadelphia, PA 19103
Office: 215-238-8070
Fax*:* 215-772-3126
rbrownstein@disabilityrightspa.org
bmadway@disabilityrightspa.org

*Counsel for Plaintiff*

## <u>LOCAL RULE 7.8(b)(2) CERTIFICATE</u>

I certify under penalty of perjury that the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification complies with Local Rule 7.8(b)(2) of this Court because, based on the word processing system used to prepare the Memorandum, Microsoft Word for Microsoft 365 MSO, Version 2302, the Memorandum contains 4,001 words (excluding the Table of Contents and Table of Citations).


Dated: April 24, 2023

_Rhonda Brownstein_
_____
Rhonda Brownstein

22

## **CERTIFICATE OF SERVICE**

I, Rhonda Brownstein, hereby certify that Plaintiffs' Memorandum of Law in Support of Plaintiffs Motion for Class Certification and Exhibits was served on the following by first class mail, postage prepaid on this 24th day of April, 2023:

Valerie A. Arkoosh, Acting Secretary
Pennsylvania Department of Human Services
625 Forster Street
Harrisburg, PA 17120

Kenneth J. Serafin, Chief Counsel
Department of Human Services Office of General Counsel
625 Forster Street, 3rd Floor West
Health and Welfare Building
Harrisburg, PA 17120

_Rhonda Brownstein_
Rhonda Brownstein